1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNITED STATES OF AMERICA,                    ) AU:21-CR-00203(1)-LY
                                             )
   Plaintiff,                                )
                                             )
v.                                           ) AUSTIN, TEXAS
                                             )
RYAN TAYLOR FAIRCLOTH,                        )
                                             )
   Defendant.                                ) MAY 27, 2022

       **********************************************
           TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE LEE YEAKEL
       **********************************************

APPEARANCES:

FOR THE PLAINTIFF:   G. KARTHIK SRINIVASAN
                     MICHAEL C. GALDO
                     UNITED STATES ATTORNEY'S OFFICE
                     903 SAN JACINTO BOULEVARD, SUITE 334
                     AUSTIN, TEXAS 78701

FOR THE DEFENDANT:   SHAWN C. BROWN
                     LAW OFFICE OF SHAWN C. BROWN, P.C.
                     540 SOUTH SAINT MARY'S STREET
                     SAN ANTONIO, TEXAS 78205

COURT REPORTER:      ARLINDA RODRIGUEZ, CSR
                     501 WEST 5TH STREET, SUITE 4152
                     AUSTIN, TEXAS 78701
                     (512) 391-8791

Proceedings recorded by computerized stenography, transcript produced by computer.

(Open court, defendant present)

THE CLERK:  The Court calls for sentencing 21-CR-203, *United States v. Ryan Taylor Faircloth.*

MR. SRINIVASAN:  Good afternoon, Your Honor.  Karthik Srinivasan and Michael Galdo for the government.

MR. BROWN:  Good afternoon, Your Honor.  Shawn Brown from San Antonio for Ryan Faircloth.

THE COURT:  Will the defendant please state his name.

THE DEFENDANT:  Ryan Taylor Faircloth.

THE COURT:  Mr. Faircloth, you have pleaded guilty to count one of an indictment charging you with arson, a Class C felony; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You pleaded guilty on January the 10th, 2022 before United States Magistrate Judge Susan Hightower.

Do you remember that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is it your intention to continue with your plea of guilty today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is there a plea agreement in this case?

MR. SRINIVASAN:  Yes, Your Honor.

THE COURT:  Mr. Faircloth, do you reaffirm the statements that you made in your plea agreement as well as the statements that were made in factual basis that was presented

to Judge Hightower at the time you made your plea of guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Then the court accepts and adopts the report and recommendation of the magistrate judge, accepts your plea of guilty, and finds you guilty of the offense to which you have pleaded guilty.  Have you had sufficient time to review with your lawyer the presentence investigation report prepared by the probation department in this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that under the guidelines established by the United States Sentencing Commission, which are advisory to this court, the probation department has computed your total offense level as 33 and your criminal history category as six, meaning that if this court were to determine that a guideline sentence was an appropriate sentence to impose in this case, I could sentence you to 240 months confinement in the Bureau of Prisons, a term of supervised release of three years, a fine of $250,000, restitution in the amount of $12,472.84, and a special assessment of $100?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you also understand that under the statute which you have pleaded guilty and been found guilty, I could sentence you to 20 years confinement in the Bureau of Prisons, and must sentence you to at least five years

confinement in the Bureau of Prisons, a term of supervised release of three years, a fine of $250,000, restitution in the amount of $12,472.84, and a special assessment of $100?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Does the government have objection to the presentence investigation report?

MR. SRINIVASAN:  Your Honor, we did not file objections.  However, the defendant did file an objection, to which we agree, that a particular guideline enhancement does not apply.

THE COURT:  Pardon me.  I didn't understand what you just said, the last part.

MR. SRINIVASAN:  I'm sorry, Your Honor.  I'll speak into the microphone.

The defendant filed an objection to the presentence investigation report.  We sent a response to probation indicating that we agreed with that objection.  So I just want to be clear that we're not filing an objection, but we do agree with the objection that the defendant filed.

THE COURT:  All right.  All right.  Mr. Brown, does the defendant have objection to the presentence investigation report?

MR. BROWN:  He does, Your Honor.  And we filed that with the probation department.  And just like the government indicated, we objected to the enhancement for the Act of

Terrorism under 18, U.S. Code, 2332(b), indicating that it didn't apply under this particular case with the facts.  And, again, the government agreed based on the facts of this particular case.

THE COURT:  So what paragraph are we referring to?  Paragraph 26?

MR. BROWN:  Judge, there's several that mention it, so it would be 14, 26, 29 --

THE COURT:  I'm just interested in how it affects the guideline range that the court considers.  Right now paragraph 26 contains a 12-level addition by virtue of the fact it says the offense is a felony that involved or was intended to promote a federal crime of terrorism.

You filed an objection which the government has conceded.  How does that affect paragraph 26?

MR. BROWN:  Twenty-six should go from 12 to zero.

MR. SRINIVASAN:  That's correct, Your Honor.

THE COURT:  All right.  So if I grant that and strike that, then that reduces the adjusted offense level from 36 to 24.

MR. BROWN:  That's correct, Your Honor.

THE COURT:  And then we take off the three-level adjustment for acceptance of responsibility, and that comes up with a total offense level of 21 and a criminal history category of six.

MR. BROWN:  Judge, it should be one because the criminal history category carries over with the act of terrorism, and he only has one point, so it should be a category one.

MR. SRINIVASAN:  That's correct, Your Honor.

THE COURT:  All right.  So it would be 21-1, and the correct guideline range would then be 37 to 46; is that correct?

MR. SRINIVASAN:  Yes, Your Honor.

MR. BROWN:  That is correct, Your Honor.

THE COURT:  All right.  Then based on what has been said to me by the defendant and the concession of the government, the objection is sustained.  The court will consider a total offense level of 21 and a criminal history category of one, to the extent that the court considers a guideline sentence in this case.

That ruling having been made, Mr. Brown, do you know of any legal reason why the court should not proceed with sentencing at this time?

MR. BROWN:  None that I'm aware of at this time, Your Honor.

THE COURT:  Mr. Srinivasan, does the government know of any legal reason why the court should not proceed with sentencing at this time?

MR. SRINIVASAN:  No, Your Honor.

THE COURT:  Mr. Brown, Mr. Faircloth, if either or both of you have anything that you would like to say to the court before the court pronounces sentence, I will hear from you at this time and I will take whatever you have to say into account in determining the appropriate sentence to impose in this case.

THE DEFENDANT:  Thank you, Your Honor.  I would like to start my statement with an apology.  I'd like to apologize to the people here on my left for putting them -- for my actions and any trauma I may have brought to them.  I'd like to apologize to my friends and family here for putting them in this situation and the things they have gone through with me. As a whole, I'd like to I apologize to the entire courtroom for having to be here today at this time due to the decisions I made.

I can honestly say my actions that night have been the most irrational and illogical thing I've ever done, and I hope to put all of this behind me soon some day.

I want to thank Magistrate Judge Hightower for allowing me to be out on bond so I can spend time with my family, friends, and have some time to get my affairs in order.

I ask that my sentence only be dealt with fairness and every factor be thought about for this situation.  I've learned lessons, I'm continuing to learn lessons, and I know I will learn more lessons in the future.

Thank you, Your Honor.

THE COURT:  Mr. Brown?

MR. BROWN:  Yes, sir, Your Honor.  Just briefly, we filed a sentencing memorandum kind of supporting our position.  Mr. Faircloth did subject himself to Therapist Pace, who has been addressing any issues that he's had.  He's had some issues: familial issues, relationship issues, and drug and alcohol issues.  And he's -- he went on his own to get this counseling.  It's helped him tremendously grow as a person.  I think it's helped him come to terms with the statement that he just made to this court.

He accepted responsibility from a very early stage.  Even before he took a plea in this case, Judge, he gave, I want to say, an hour-and-20-minute confession to law enforcement when they met with him and first arrested him.  He went step by step and answered their questions.  And so we would ask the court to take that into consideration, the sentencing memo, the letters of support, the fact that he took it upon himself to see a therapist and address any issues.  As the court knows, it it's like an onion.  You keep peeling layers back and more issues come up.  But Ryan has been very diligent in addressing them and has come along way since his date of arrest in this particular matter.

THE COURT:  Just a minute, please.  I want to ask you about one thing.  I'm reviewing the plea agreement that you've

entered into.  With regard to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, both sides have agreed to that and are recommending that as an appropriate sentence to me; is that's correct?

MR. BROWN:  That's correct, Your Honor.  It was a recommended sentence for the Court to consider.  It's between which 60, which is the minimum -- 60 months to 72 months.

THE COURT:  All right.  Anything further from the defense at this time?

MR. BROWN:  Nothing at this time, Your Honor.

THE COURT:  All right.  Mr. Srinivasan, I'll hear from the government.

MR. SRINIVASAN:  Thank you, Your Honor.  We ask the Court to impose a sentence of 72 months in this case, which is the high end of the recommended range.

Your Honor, when we were having discussion earlier about the guidelines enhancement, we took the position that the 12-level enhancement did not apply in this case by its technical legal terms, Your Honor, because the defendant's conduct was primarily focused on a political party, and that's where his animus was focused as opposed to the government and retaliation for government conduct.

That, however, does not end the story, Your Honor, because Application Note 4 to the guideline asks the Court to consider whether the defendant's conduct was designed to

intimidate or coerce a civilian population.  And that's exactly what the defendant did here when he fire-bombed the Travis County Democratic Party offices.

This was an act of political violence.  The defendant was filled with political and social grievances ranging from the actions of the current administration, to border policies, to abortion, to the 2020 election.  But rather than exercising his rights peacefully through the political process to persuade his fellow citizens about his views, he pinned those grievances on the Democratic Party and fire-bombed the local party offices.

He's been convicted of arson, Your Honor, but we should call this what it was.  It was ideologically motivated firebombing of a political party office in the heart of Austin.

In the span of about two hours, in the dead of night on September 29th, the defendant decided to carry out this attack, assembled a Molotov cocktail from items that were readily available to him, researched the location of the democrat party offices, and he went there to burn the place down.

And there should be no question about the defendant's intent in committing this crime.  He went to the door of the party offices three times that night.  The first time he threw a rock in the door.  The second time he dropped the Molotov cocktail in, along with a smoke bomb.  It didn't light that

time, so he went back a few minutes later and he dropped a lit firecracker, what he called later an artillery shell, into the offices.  The gasoline caught fire, and the party offices could have burned down.

Now, no one was hurt during this crime, Your Honor.  However, that was dumb luck.  A Good Samaritan just happened to be across the street, had a fire extinguisher, was able to make it there within moments, and tried to put this fire out.  But the defendant's conduct certainly placed, at a minium, the lives and the safety of first responders at risk, because those would have been the individuals who would have needed to go into this inferno to put it out to protect life and property.

And, Your Honor, we know that he intended that explosion and that fire because, as soon he dropped that artillery shell, that lit artillery shell, he ran from the door.  You don't run unless you expect an explosion.

All of the 3553(a) factors in this case weigh in favor of upward departure to 72 months.  The nature and circumstances of this offense were extremely serious.  Although the defendant does not have a significant criminal history, his actions were ideologically motivated.  The flash to bang in this case, the time from decision and construction of the weapon to the time when he attacked the party offices, was around two hours, Your Honor.  It was very, very quick.  It was premeditated.  He knew exactly what he was doing.

A sentence of 72 months, Your Honor, will promote respect for the law and deter this kind of conduct because it would send a message that political violence of the kind that this defendant engaged in is unacceptable and will be met with stern justice.  Thank you, Your Honor.

THE COURT:  Does probation have anything further before sentence is imposed?

PROBATION OFFICER:  No, Your Honor.

THE COURT:  Is there anyone here present in the audience that desires to speak with regard to this case before the court imposes sentence?  If so, please come forward at this time.

Seeing none --

MR. SRINIVASAN:  Your Honor, I think that one of the victim representatives may be here.

THE COURT:  Well, that's fine.  It's just when I call people to come forward, I expect them to get right up and come forward.  And if there's anyone else who desires to speak, get up at this point and come to the gate where the court security officer is.

The first lady may come forward.  Please state your name and then share anything you desire to share with the court.  And anyone else who may want to speak, get up at this time and come to the gate where the court security officer is.

Please proceed.

MS. NARANJO: My name is Katie Naranjo. And I apologize, Your Honor. I sat my son down, so it took me a second. I'm the chair of the Travis County Democratic Party. The Travis County Democratic Party is a volunteer-run and -led organization. We span with volunteers, activists, staff, and elected officials.

On the night of September 29th -- or the morning of September 29th when the event occurred, it was a shock to my staff and I. And I understand political discourse these days for any party, for any individual, is fraught with emotion. However, violent acts do not have a place in our civil society.

The individuals that Mr. Faircloth was bombing were social workers, an Army veteran, a public policy student, and students at UT, my staff and my interns, the people who reside in that office.

We have been the subject of a number of attacks, unfortunately, and that discourse in our society must be dealt with in a serious manner. Sentencing is important. However, our sincerest hope from the party is for rehabilitation so that the violence ends, the violence stops within our communities, the violence stops within our political process.

Mr. Faircloth threw a number of things that night, including an incendiary device, a bomb, because he wanted to assert his power over other people. I can't go into his motives, but my understanding was the gloating and the letters

he left were meant to incite terror. I do take slight offense that that's not considered, was the emotional intimidation intended to prevent others from participating in the political process, as well as hoping that others would copycat him to take action against others.

That's why I'm here today. I'm not here -- it's not easy to be here with my child, obviously. Unfortunately, my husband had to work. But I'm here because we sincerely want violence to stop in our political process, and that any individual who participates in a violent act in a civil society be held accountable, but more importantly, be rehabilitated to reenter society and not continue to have violent thoughts and behaviors that did -- that did happen prior to the actions he took and after the actions he took on that evening.

The interesting thing is Mr. Faircloth has not exercised what is his most powerful tool: his right to vote. He has no voter history. So instead of throwing a bomb, he could have thrown his vote into an election. And we encourage all citizens to participate peacefully to have their voice heard, not through violence, but through the right to vote.

Thank you, Your Honor.

THE COURT: Thank you.

Seeing no one else, Mr. Faircloth, Mr. Brown, if either or both of you have anything you would like to say in addition to what you've already said or in response to anything

that's been said by anyone else, I'll hear from you at this time.

MR. BROWN: Just briefly, Your Honor. The range of punishment on this particular case would be 37 to 46 months. As we know, the mandatory minimum is 60, so it's below the mandatory minimum. The government is asking that the sentence in the low end of guideline range be essentially doubled for this particular case. We're asking that he be sentenced at the low end of the range of punishment on this particular case, which is 60 months.

I think that's more than sufficient under the circumstances of this particular case for the actions and for what transpired. Like we mentioned previously, Mr. Faircloth readily accepted responsibility, pled fairly early on in this particular case, gave a lengthy confession just as the officers took him into custody.

So under those circumstances, Judge, plus with the sentencing memo that we have filed before this particular court, we would ask for a sentence of 60 months.

THE COURT: Mr. Faircloth, anything in addition you wish to say personally?

THE DEFENDANT: No, Your Honor.

THE COURT: The Court has read and reviewed the presentence investigation report prepared by the probation department in this case. And after sustaining the objection to

the report, I find the correct total offense level is 21, the correct criminal history category is one, and the correct guideline range is a term of 37 to 47 months, but the court also notes that that guideline range would be adjusted to 60 months because of the statutory minimum in this case, and I accept and adopt that report.

I have further reviewed carefully the plea agreement in this case which provides under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure that the parties recommend to the court that the appropriate resolution of this case would include a term of imprisonment between 60 months and 72 months custody in the Bureau of Prisons. And, of course, the government is arguing for 72 months, and the defendant is arguing for 60 months.

In addition, I have reviewed the sentencing memorandum in this case. I have reviewed the letters and other information provided me from the executive director and chair of the Travis County Democratic Party. And I've heard the statements this morning -- or this afternoon by Ms. Naranjo and the statements heard -- I mean statements of the defendant in this case, all of which I have taken into account. And I've heard the statements by the lawyers.

As stated during the discussion on the objection to the presentence investigation report, that technically under the law -- if anything is technical under the law or whether

it's just the law -- there was inadequate evidence that this was an act of terrorism as defined by the statute. That having been said, that does not in any way lesson the gravity of the actions of this defendant.

This was an attack on the government of the United States. We have a party system -- political party system in this country that has two primary political parties who conduct primary elections which choose the candidates, one of which -- one of whom is generally elected to a political office. So the court considers this to be an attack on an institution of government.

I further find from my review of the presentence investigation report and the evidence before me that it was an attempt by this defendant to intimidate or coerce an institution of at least democracy, if not the government itself.

Attacks on our way of life and the way we govern ourselves cannot be overstated in their importance. We're living in a difficult time right now. Our traditional institutions of government are under constant attack and are discredited. And I find that this case, while although not legally an act of terrorism is similar to an act of terrorism.

I believe that you, Mr. Faircloth, have given a pretty good break and have been well represented by the plea agreement that has been negotiated in this case, and I will

accept the recommendation in the plea agreement and sentence within the range that you have agreed upon.

In doing so, though, I have considered all of the factors in Title 18 of the United States Code, particularly with regard to the seriousness of the offense. If I have not made it clear up to this point, I consider this one of the most serious of offenses in this case. And that is what I've looked most strongly and most pointedly at in the Title 18, 3553 factors.

I find that the sentence I'm going to impose is in keeping with your plea bargain agreement; that it is a sentence that is tailored to meet the facts and circumstances of your background and the offense for which you have been convicted; that it is a sentence that takes into account all of the factors in Title 18 of the United States Code, Section 3553, all of which I have considered and only one I have mentioned within any emphasis at the point; and that this is a reasonable sentence to impose in this case.

Therefore, pursuant to the Sentencing Reform Act of 1984, it is the judgment of this court that you, Ryan Taylor Faircloth, are hereby sentenced to 72 months confinement in the Bureau of Prisons.

It is my recommendation to the Bureau that you be placed in their facility at La Tuna in El Paso and that you be afforded the most intensive drug counseling and treatment that

are provided in any institution where you're held and that you be provided with educational training and courses to the extent they're available at the institution to which you are assigned. And it is my recommendation to you that you take advantage of those.

Upon release from imprisonment, you shall be placed on supervised release for a term of three years. Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you are released.

While on supervised release, you shall not commit another, federal, state or local crime, and you shall comply with the mandatory and standard conditions adopted by this court on November 28th, 2016.

In addition, you shall comply with the follow special conditions:  You shall participate in a substance abuse treatment program and follow the rules and regulations of that program.  The program may include testing and examination during and after program completion to determine if you have reverted to the use of drugs or alcohol.  A probation officer may supervise your participation in the program, and you shall pay the costs of the program and any treatment to the extent you are financially able.

During your term of supervision, you shall abstain from the use of alcohol and any and all intoxicants.  You shall

submit to substance abuse testing to determine if you have used a prohibited substance.  You shall not attempt to obstruct or tamper with any testing method, and you shall pay the cost of any testing to the extent you are financially able.

You shall submit your person, property, house, residence, office, vehicle, papers, computers as defined in Title 18 of the United States Code, section 1030(e)(1), and all over electronic communications or data storage devices or media to a search conducted by a United States probation officer. Your failure to submit to a search may be grounds for revocation of your release.

You shall warn any other occupant of any premises that you occupy that those premises may be subject to searches pursuant to this condition.  A probation officer may conduct a search under this condition when a reasonable suspicion exists that you have violated a condition of your supervision.  Any search must be conducted at a reasonable time and in a reasonable manner.

It is further ordered that you make restitution in to the following victims totaling $12,472.84:

To the Travis County Democratic Party, 1311 East 6th Street, Unit B, Austin Texas 78702, restitution in the amount of $9,472.84; to Lorenzco, Inc. 1311-A East 6th Street, Austin, Texas 78702, restitution in the amount of $3,000.

If you are not now able to pay this indebtedness, you

shall cooperate fully with the Office of the United States Attorney, the Bureau of Prisons, and the United States Probation Office to make payment in full as soon as possible, including during any period of incarceration.

Any unpaid balance at the commencement of a term of supervised release shall be paid on a schedule of monthly installments to be established by the United States Probation Office and approved by the court.

It is additionally ordered that you shall pay the United States -- to the United States a fine of $5,000.  It is further ordered that you shall pay to the United States a special mandatory assessment of $100.

Mr. Faircloth, at this time I am handing to the clerk of this court the presentence investigation report prepared by the probation department in this case and to which we have referred during this proceeding.  I'm ordering that that report be sealed.  That means that no one may come to the district clerk's office and read about you or any member of your family or any of the facts and circumstances surrounding the offense for which you have been convicted and sentenced today which may be contained in that report.

However, I wish to advise you that if for any reason -- pardon me.  I wish to advise you that if there is an appeal from the sentence that I have just imposed, both you and the government may use your copies of the appeal -- pardon

me -- copies of the presentence investigation report for purposes of appeal, and in that event the presentence investigation report will become part of the record on appeal.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Pursuant to the terms of your plea agreement, you have waived your right to appeal the sentence that I have just imposed except under certain circumstances set forth in that agreement.  In a moment I will be passing to you and your lawyer letters that more fully explain that.

However, I wish to tell you at this time that if for any reason you desire to appeal the sentence that I have just imposed or if for any reason you think you have a right to appeal that sentence, you may only do so if you first file with the clerk of this court within 14 days a Written Notice of Appeal.  That's a written document called a "Notice of Appeal."

If you do not file such a written Notice of Appeal with the clerk of this court within 14 days, you can never appeal the sentence that I have just imposed and you will forever waive your right to appeal that sentence.

Do you understand that?

MR. BROWN:  Yes, Your Honor.

THE COURT:  Then at this time I am passing to you and your lawyer letters that more fully explain that.

Mr. Brown, do you care to be heard on whether the

defendant should be allowed to self-surrender or whether he should be remanded into custody at this time?

MR. BROWN:  I would like to be heard on that, Your Honor.  We would ask for the opportunity to self-surrender.  He's been in compliance with pretrial.  I had asked for a report today just to make sure that was consistent.  But after talking to my client, I believe he's been in compliance with pretrial, with his curfew, with all the other conditions that the Court has ordered as part of his pretrial release.  So we would ask that he be able to self-surrender.

THE COURT:  Mr. Srinivasan.

MR. SRINIVASAN:  Your Honor, the government initially asked for remand in this case.  We defer to the Court's judgment on whether to order self-surrender.  We're not taking a position on that.  We understand that the defendant has for the most part been compliant.  This was, however, a serious offense.  He's been convicted of that offense and sentenced for that offense.  We defer to the Court's judgment on that.

THE COURT:  It is a serious offense, but the probation department has not advised of anything that leads the court to believe the defendant is a flight risk or a danger to the community at this time.  And I have received a status report from pretrial services that he continues to abide by the rules and regulations of the location monitoring program.

So I will allow him to remain at large provided,

Mr. Faircloth, you represent to the court that if I allow you to remain at large under the same terms and conditions of your current release, that you will report when and where as directed by the Bureau of Prisons, the United States Marshals, or any other agency of the federal gothernment.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Then I will not remand you at this time.  You will be allowed to self-surrender.  But until that point, you will be under the same constraints and rules as your previous pretrial release, and I instruct you to speak with the pretrial services office before you leave this building today to see if they have any immediate instructions to you.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor, I do.

THE COURT:  Is there anything further to come before the court in this case at this time?

MR. SRINIVASAN:  Not from the gothernment.  Thank you.

MR. BROWN:  Nothing from defense, Your Honor.  Thank you.

THE COURT:  At this time the court dismisses any pending motions on which the court has not previously ruled.

You are excused.  Good luck to you, Mr. Faircloth.

(End of transcript)

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

**UNITED STATES DISTRICT COURT      )**

**WESTERN DISTRICT OF TEXAS         )**

I, Arlinda Rodriguez, Official Court Reporter, United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

WITNESS MY OFFICIAL HAND this the 2nd day of June 2022.

/S/ Arlinda Rodriguez
Arlinda Rodriguez, Texas CSR 7753
Expiration Date:  10/31/2023
Official Court Reporter
United States District Court
Austin Division
501 West 5th Street, Suite 4152
Austin, Texas 78701
(512) 391-8791